IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

:

CAPITAL SOURCE FINANCE, LLC

:

v.                  : Civil Action No. DKC 2006-2706

:

DELCO OIL, INC., et al.

:

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case arising from the breach of a loan agreement are motions filed by Defendants DeLuca Properties, Inc.; Gas Properties, Inc.; All-Star Sports Camp (collectively "the DeLuca entities"); Stephen B. DeLuca; Denise DeLuca; Steven J. Markus, Jr.; Richard R. Thames; and Stutsman Thames & Markey, P.A. (the "Stutsman firm") seeking to dismiss or to transfer this action to the United States District Court for the Middle District of Florida, where all of the Defendants reside or have their principal places of business. (Papers 39, 48, 49, 50, 52, 55)). Defendants move to dismiss based on lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and failure to state a claim.[1]  The motions to transfer are based on improper venue, the doctrine of *forum non conveniens*, and 28 U.S.C. §§ 1404(a) & 1406(a).  The issues related to the motions to dismiss or transfer have been

---

[1] The remaining Defendant, Delco Oil, Inc., has not moved to dismiss or transfer this action, and has not joined in any of the pending motions.

briefed fully and the court now rules, no hearing being deemed
necessary.   Local Rule 105.6.   For the following reasons,
Plaintiff's claims in counts VI, VII, VIII, IX, X, XII, and XIII of
the amended complaint will be dismissed, and Plaintiff's claim in
count V of the amended complaint will be dismissed in part.   The
pending motions to dismiss or to transfer will otherwise be denied.

## I.  Background

Defendant Delco Oil, Inc. ("Delco"), a distributor of
petroleum products, entered into a financing arrangement with
Plaintiff Capital Source Finance LLC pursuant to a lengthy written
agreement (the "Loan Agreement") that was ultimately executed by
Delco's President, Stephen DeLuca, on April 26, 2006.   Stephen
DeLuca also executed a personal guarantee (the "Guarantee
Agreement") of Delco's obligation to repay the revolving line of
credit balance on the same day.   Under the Loan Agreement,
Plaintiff provided Delco with a revolving line of credit, and Delco
pledged all of its current and after-acquired personal property as
security for the line of credit.   In particular, Delco pledged its
accounts receivable and inventory.   Payments made on Delco's
accounts receivable are referred to under the Loan Agreement as
Plaintiff's "Cash Collateral," and Plaintiff acquired a first
priority lien over these payments.   Delco was required, under the
Loan Agreement to deposit these collections immediately into an
account, referred to as the "Blocked Account," from which only

Plaintiff could make withdrawals.  These payments would be credited against Delco's outstanding balance under the line of credit, thus allowing Delco to make further withdrawals to continue operating its business.  The Loan Agreement also provided that the revolving line of credit extended to Delco would be capped at the lower of $18 million, or the result of a formula based on the value of certain of Delco's accounts receivable and a portion of its inventory.  Before making withdrawals from the revolving line of credit, Stephen DeLuca was required to submit and personally certify the accuracy of periodic statements of Delco's accounts receivable and inventory, referred to in the Loan Agreement as "Borrowing Base Certificates."  Based on the initial documentation submitted by Delco, its line of credit was capped at $14,322,760.89 as of the date the Loan Agreement and Guarantee Agreement were executed, and Delco began withdrawing funds from the line of credit.

Plaintiff contends that Delco, through Stephen DeLuca, had submitted and continued to submit fraudulent documentation in association with its application for credit and with the Borrowing Base Certificates.  Stephen DeLuca allegedly created false invoices reflecting transactions that did not occur, and which were allegedly flagged with the letters "bb," in order artificially to

inflate the cap on Delco's revolving line of credit.[2]  Plaintiff also alleges that at Stephen DeLuca's direction, Delco inflated its inventory reports with the same purpose of artificially inflating the cap on Delco's line of credit.  Plaintiff explains that it did not learn of either aspect of the alleged fraud until October 2006.

As of September 2006, Plaintiff contends that Delco was in default under the Loan Agreement.  Plaintiff sent Delco a written notice of default on September 26, 2006, indicating that Delco had defaulted on the Loan Agreement by failing to deposit its cash collections into the Blocked Account, failing to deliver required Borrowing Base Certificates and other required certifications, and failing to notify Plaintiff of the other defaults pursuant to the terms of the Loan Agreement.  Delco requested a post-default advance from Plaintiff, in the amount of $633,213.65 on approximately October 5, 2006, and Plaintiff granted this advance, after requiring Delco, through Stephen DeLuca, to acknowledge the occurrence of the default events noted in the September 26, 2006 notice, requiring the provision of additional collateral, and requiring Delco to sign a waiver for any defenses, causes of action, or other claims against Plaintiff.  Plaintiff funded a second post-default advance on October 6, 2006.

---

[2] Stephen DeLuca denies that he knew of or produced the inaccurate documents, although he acknowledges that in hindsight, the documents he submitted to CSF were, in fact, inaccurate reflections of Delco's financial condition.

Plaintiff also asserts that after the Loan Agreement was executed, DeLuca, acting in concert with other Defendants, diverted cash collections and either held them in cash, or in some instances, deposited them in bank accounts in Delco's name that Plaintiff was not aware of at the time.  Plaintiff contends that these funds were used to the benefit of the DeLuca entities.

Plaintiff filed the present action, along with a motion for a Temporary Restraining Order ("TRO") on October 13, 2006. Plaintiff's initial complaint alleged only two breach of contract actions, against Delco for breach of the Loan Agreement and against DeLuca for breach of the Guarantee Agreement.  The court granted Plaintiff's TRO motion and entered a TRO on October 16, 2006. Delco filed a bankruptcy petition in the United States Bankruptcy Court for the Middle District of Florida the next day, October 17, 2006.[3]  The bankruptcy petition was prepared by Mr. Thames and the Stutsman firm.  Delco continued to operate under DeLuca's direction as a debtor-in-possession until a trustee was appointed by the bankruptcy court.  On January 19, 2007, Plaintiff filed a motion for leave to amend the complaint, which was granted on January 22, 2007.  The amended complaint adds seven additional defendants and twelve additional counts to the initial complaint.  Counts I and II

---

[3] The Automatic Stay associated with Delco's bankruptcy petition was lifted with respect to Plaintiff's claims against Delco in this action on March 21, 2007 by Order of the United States Bankruptcy Court for the Middle District of Florida.  (*See* Paper 65, Ex. A).

of the amended complaint assert breach of contract claims against Delco for breach of the Loan Agreement and against Stephen DeLuca for breach of the Guarantee Agreement, respectively.   Counts III and IV of the amended complaint allege fraud against Stephen DeLuca with respect to the inaccurate financial documents and certifications provided with respect to Delco's line of credit. Count V alleges that Stephen DeLuca converted Plaintiff's Cash Collateral by diverting Delco's cash collections rather than having them deposited directly into the Blocked Account.   Count VI claims that Mr. Markus and Stephen DeLuca conspired to convert the Cash Collateral.   Counts VII and VIII allege that Mr. Thames and the Stutsman firm, directly and through a conspiracy with Stephen DeLuca, converted Plaintiff's cash collateral and other collateral pledged to Plaintiff by accepting payments from Delco for their services that they knew were derived from the diverted cash collections and by assisting DeLuca to continue operating Delco and diverting cash collections from the Blocked Account after Delco's bankruptcy filing.   Count IX  and X allege that Denise DeLuca, Stephen DeLuca's wife, conspired with Stephen DeLuca to be, and was, unjustly enriched.   The basis for this claim are factual allegations that she was paid a salary she did not earn and the couple's home was improved, both through the knowing use of funds derived from the diverted cash collections.   Count XI asserts that the DeLuca entities are the alter egos of Stephen DeLuca, their

6

sole shareholder and officer, and that DeLuca commingled his own funds with the entities and failed to observe corporate formalities.  This claim is an attempt to pierce the corporate veil to impose liability for the claims alleged against Stephen DeLuca against the DeLuca entities.   Counts XII and XIII allege that the DeLuca entities conspired with Stephen DeLuca to be, and in fact, were unjustly enriched because their expenses were paid and their property was acquired through knowing use of funds derived from the diverted cash collections.  Count XIV seeks specific performance of an alleged promise by Stephen DeLuca, made in conjunction with the post-default advances, to execute a mortgage over his personal residence in Plaintiff's favor, as additional security for these loans to Delco.

## II.  Subject Matter Jurisdiction

### A.  Standard of Review

Motions to dismiss for lack of subject matter jurisdiction are governed by Fed.R.Civ.P. 12(b)(1).  The plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court.  *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).  In a 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans*, 166 F.3d at 647.  The

court should grant the 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond*, 945 F.2d at 768.

## B.  Analysis

Mr. Markus, Stephen DeLuca, Denise DeLuca, and the DeLuca entities move to dismiss counts V, VI, VIII, IX, X, XI, XII, and XIII of the amended complaint, which allege conversion, unjust enrichment, conspiracy, and alter ego.  They contend that only the trustee of Delco's bankruptcy estate has standing to bring these claims because the claims are property of the estate.

"If a cause of action is part of the estate of the bankruptcy then the trustee alone has standing to bring that claim." *Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.*, 187 F.3d 439, 441 (4th Cir. 1999) (citing *Steyr-Daimler-Puch of Am. Corp. v. Pappas*, 852 F.2d 132, 136 (4th Cir. 1988)), *cert. denied*, 528 U.S. 1156 (2000).  A creditor lacks standing to bring a cause of action that "share[s] the same underlying focus" as a claim the bankruptcy trustee could bring, even if the claims "do not contain identical elements." *Id.* "Reserving [such an] . . . action for the trustee maintains the integrity of the bankruptcy proceeding and ensures that individual creditors cannot hijack the bankruptcy process.  If it were otherwise, there would be 'a multijurisdictional rush to judgment whose organizing principle could only be first-come-first-served."

*Id.* at 442 (citing *Am. Nat'l Bank v. MortgageAmerica Corp. (In re MortgageAmercia Corp.)*, 714 F.2d 1266, 1274 (5th Cir. 1983)). A creditor lacks standing to bring claims based on factual allegations that "would support an action by . . . [the] trustee in bankruptcy to avoid the . . . transaction as a fraudulent conveyance." *Poth v. Russey*, 99 F.App'x 446, 457 (4th Cir. 2004) (Unpublished Disposition).

**1. Conversion, Unjust Enrichment, and Conspiracy**

The parties dispute whether Maryland or Florida law applies to this claim, but this dispute is immaterial to the pending motion and need not be resolved at this time because under either law, a conversion claim must assert a distinct injury to the plaintiff in the form of interference with an immediate right to possession of property.

Under Maryland law, conversion requires "'the wrongful deprivation of a person of property to the possession of which he is entitled'" and must have the mental state of at least intending "'to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights.'" *Darcars Motors of Silver Spring, Inc. v. Borzym*, 379 Md. 249, 262-63 (2004) (quoting *Wallace v. Lechman & Johson, Inc.*, 354 Md. 622, 633 (1999); *Keys v. Chrysler Credit Corp.*, 303 Md. 397 414 (1985)). A defendant, such as the purchaser of stolen goods, commits conversion by possessing the property inconsistent with the plaintiff's actual rights even

without having taken the property from the plaintiff's possession and without knowledge of the plaintiff's right to possession. *Id.* (quoting *Keys*, 303 Md. at 414).

Under Florida law, conversion also requires an act of dominion over property inconsistent with the owner's actual rights; however, the question of intent is somewhat unsettled, with some courts holding that some level of intent to deprive the rightful owner of the property is required, but the weight of authority suggests that no mental state is required for the tort of conversion. *United States v. Bailey*, 288 F.Supp.2d 1261, 1264-65 (M.D.Fla. 2003) (citing cases), *aff'd*, 419 F.3d 1208 (11th Cir. 2005). Florida law also explicitly requires that the plaintiff prove that it had an immediate right to possess any property which it claims was subject to conversion while it was not in the plaintiff's possession, and any contingent right of possession is insufficient to support an action for conversion. *Id.* at 1271, 1274 (citing cases). Under either state's law, conversion can only apply to currency if the alleged conversion relates to a specific and identifiable fund. *Darcars Motors*, 379 Md. at 259 n.3; *Belford Trucking Co. v. Zagar*, 243 So.2d 646, 648 (Fla.Dist.Ct.App. 1970); *Bailey*, 288 F.Supp.2d at 1264.

The tort of conversion, under either Maryland or Florida law, focuses on the individual harm suffered by Plaintiff through the deprivation of its right of immediate possession in Delco's

receipts on its accounts payable, which it claims were to have been immediately deposited in Plaintiff's Blocked Account. Plaintiff, however, alleges facts under its conversion claims about two different types of transactions. Plaintiff's claims against Stephen DeLuca and Mr. Markus seek to hold them personally liable for their alleged roles, as agents of Delco, in causing Delco to retain control over its cash collections rather than depositing those collections directly into the Blocked Account. This alleged conversion was complete when Delco retained control over the cash collections, and as such this tort involves no injury to Delco's bankruptcy estate that the trustee would have standing to enforce. Accordingly, this court has subject matter jurisdiction over these claims. Plaintiff's further allegations that Stephen DeLuca diverted funds derived from the cash collections for his own use and the use of the DeLuca entities and his wife, however, whether grounded in claims of unjust enrichment or conversion, necessarily assert that these funds were taken from Delco's control. Although Plaintiff claims that the funds were wrongfully in Delco's control, that issue is more properly presented in the context of Delco's bankruptcy to prevent Plaintiff from rushing ahead of other creditors who may have any interest in funds that were, rightly or wrongly, subject to Delco's control.

Accordingly, Plaintiff's claims for unjust enrichment and conspiracy for unjust enrichment against Stephen and Denise DeLuca

and the DeLuca entities will be dismissed for lack of subject matter jurisdiction.   Likewise, Plaintiff's conversion claims against Stephen DeLuca, Mr. Markus, Mr. Thames, and the Stutsman firm will be limited in scope to those claims asserting that the Defendants' acted as agents of Delco to retain control over Delco's cash collections rather than depositing them in the Blocked Account.[4]   Plaintiff's civil conspiracy claims against the DeLuca entities in count XIII of the complaint are likewise predicated on the diversion of the cash collateral after it remained in Delco's control, and accordingly will also be dismissed for lack of subject matter jurisdiction.   Plaintiff's alter ego claim against the DeLuca entities, however, is merely a theory of liability attempting to hold the entities responsible for DeLuca's conduct as alleged in other counts, and as such is within this court's subject matter jurisdiction to the same extent as the underlying allegations as to Stephen DeLuca.

## 2.  Fraud and Specific Performance

Stephen DeLuca also argues that this court lacks subject matter jurisdiction over Plaintiff's claims for fraud (count IV) and specific performance (count XIV) because Plaintiff seeks to impose a constructive trust on certain of his assets.   In making this argument, Stephen DeLuca relies upon *Fink v. Pohlman*, 85

---

[4] Mr. Thames and his firm did not move to dismiss based on a lack of subject matter jurisdiction, but the court is obligated to raise *sua sponte* any defect in its own subject matter jurisdiction.

Md.App. 106, 118-19 (1990), for the proposition that Maryland courts lack jurisdiction to grant injunctive relief, including a constructive trust, over real or personal property located in another state.[5]   This issue concerns only the relief that this court is empowered to grant, and it would be premature to decide this question at this early stage of the proceeding.   This aspect of Stephen DeLuca's motion to dismiss will be denied without prejudice to renewal at an appropriate time.

III.  **Personal Jurisdiction**

Each of the remaining Defendants, Mr. Thames, the Stutsman Firm, Mr. Markus, Stephen DeLuca and the DeLuca entities argue that this court lacks personal jurisdiction over them with respect to the tort claims alleged in the amended complaint.

A.  **Standard of Review**

When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Fed.R.Civ.P. 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-

---

[5] Plaintiff contests this legal proposition, arguing that the court could exercise *in personam* jurisdiction to order a defendant to convey property located in another state pursuant to a constructive trust.

60 (4th Cir. 1993)).   If jurisdiction turns on disputed facts, the court may resolve the challenge after a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question.   *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir. 1989).   If the court chooses to rule without conducting an evidentiary hearing, relying solely on the basis of the complaint, affidavits, and discovery materials, "the plaintiff need only make a *prima facie* showing of personal jurisdiction." *Carefirst*, 334 F.3d at 396; *see also Mylan*, 2 F.3d at 60; *Combs*, 886 F.2d at 676.   In determining whether the plaintiff has proven a *prima facie* case of personal jurisdiction, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan,* 2 F.3d at 60; *Carefirst*, 334 F.3d at 396.

**B. Analysis**

A federal district court may exercise personal jurisdiction over a nonresident defendant "if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993). The Court of Appeals of Maryland has "consistently held that the purview of the long arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Federal Constitution." *Beyond Sys., Inc. v. Realtime Gaming Holding Co.*,

14

388 Md. 1, 15 (2005).  Yet, courts may not "simply dispense with analysis under the long-arm statute," but rather, must interpret it "to the limits permitted by the Due Process Clause when [they] can do so consistently with the canons of statutory construction." *Mackey v. Compass Mktg., Inc.*, 391 Md. 117, 141 n.6 (2006), *cert. dismissed*, 127 S.Ct. 34 (2006).

Maryland's statute provides in part:

> (b) A court may exercise personal jurisdiction over a person, who directly or by an agent:
>
>> (1) Transacts any business or performs any character of work or service in the State;
>>
>> . . .
>>
>> (3) Causes tortious injury in the State by an act or omission in the State;
>>
>> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State; . . .

Md. Code Ann., Cts. & Jud. Proc., § 6-103(b).  There is a limiting condition in subsection (a): "If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section."

Plaintiff asserts that personal jurisdiction is proper over Defendant based on § 6-103(b)(1).  Transacting business pursuant to

subsection (b)(1) "requires 'actions [that] culminate in purposeful activity within the state.'"  *Bahn v. Chi. Motor Club Ins. Co.*, 98 Md.App. 559, 568 (1993); *Prince v. Illien Adoptions Int'l, Ltd.*, 806 F.Supp. 1225, 1228 (D.Md. 1992); *Sleph v. Radtke*, 76 Md.App. 418, 427 (1988), *cert. denied*, 314 Md. 193 (1988).  Where the contacts involve a contract, "Maryland courts could and would assert jurisdiction over a party to a contract in a suit for breach of that contract if the party has performed 'purposeful acts' in Maryland 'in relation to the contract, albeit preliminary or subsequent to its execution.'"  *Du-Al Corp. v. Rudolph Beaver, Inc.*, 540 F.2d 1230, 1232 (4th Cir. 1976)(citing *Novack v. Nat'l Hot Rod Ass'n*, 247 Md. 350, 357 (1967)).  Subsection (b)(1) does not require the defendant to have been present physically in Maryland.  *See Bahn*, 98 Md.App. at 568 (stating that under this subsection "[t]he defendant need never have been physically present in the state"); *Sleph*, 76 Md.App. at 427 (stating that a "nonresident who has never entered the State . . . may be deemed to have 'transacted business' in the State within the meaning of subsection (b)(1) as long as his or her actions culminate in 'purposeful activity' within the State").

With respect to the Due Process analysis, the exercise of personal jurisdiction over a nonresident "depends on whether the defendant's contacts with the forum state provide the basis for the suit."  *See Mitrano v. Hawes*, 377 F.3d 402, 406-07 (4th Cir. 2004)

(citing *Carefirst of Md. v. Carefirst Pregnancy Ctrs.*, 334 F.3d 390, 397 (4th Cir. 2003)).  Where, as here, the plaintiff contends that personal jurisdiction is proper based on specific jurisdiction, the court must examine "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable."  *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003).  Furthermore, "[a] defendant should be able to anticipate being sued in a court that can exercise personal jurisdiction over him; thus, to justify such an exercise of jurisdiction, a defendant's actions must have been 'directed at the forum state in more than a random, fortuitous, or attenuated way.'" *Mitrano*, 377 F.3d at 407 (quoting *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997)).

The first factor, purposeful availment, is satisfied where a nonresident defendant purposefully has engaged in significant activities within the forum state or has created "continuing obligations" with residents of the forum state.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).  Where the case involves a contract with a nonresident defendant:

> [T]he court must perform an individualized and
> pragmatic inquiry into the surrounding facts

17

such as prior negotiations, the terms of the
contract, the parties' actual course of
dealing, and contemplated future consequences,
in order to determine "whether the defendant
purposefully established minimum contacts
within the forum." [*Burger King Corp.*, 471
U.S.] at 479, 105 S.Ct. 2174; *see also Mun.
Mortgage & Equity v. Southfork Apartments Ltd.
P'ship*, 93 F.Supp.2d 622, 626 (D.Md. 2000).
Among the specific facts that courts have
weighed are "where the parties contemplated
that the work would be performed, where
negotiations were conducted, and where payment
was made." *Mun. Mortgage & Equity*, 93
F.Supp.2d at 626 (internal quotation omitted).
One of the most important factors is "whether
the defendant initiated the business
relationship in some way." *See id.* at 626-27
(quoting *Nueva Eng'g, Inc. v. Accurate Elecs.,
Inc.*, 628 F.Supp. 953, 955 (D.Md. 1986)).
Ultimately, the question is whether the
contract had a "substantial connection" to the
forum state. *Burger King*, 471 U.S. at 479,
105 S.Ct. 2174; *Diamond Healthcare of Ohio,
Inc. v. Humility of Mary Health Partners*, 229
F.3d 448, 451 (4th Cir. 2000).

*Johansson Corp. v. Bowness Const. Co.*, 304 F.Supp.2d 701, 705
(D.Md. 2004).

## 1.  Mr. Markus

Plaintiff does not argue that Mr. Markus himself has
sufficient personal contacts with Maryland to satisfy directly
either Maryland's long-arm statute or the requirements of Due
Process. Plaintiff argues instead that it has sufficiently alleged
a conspiracy between Mr. Markus and Stephen DeLuca to gain personal
jurisdiction over Mr. Markus based on Stephen DeLuca's acts within
Maryland.

18

As a foundational matter, "[a] civil conspiracy is a combination of two or more persons by an *agreement or understanding* to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff." *Green v. Wash. Suburban Sanitary Comm'n*, 259 Md. 206, 221 (1970) (emphasis added) (citing *Bachrach v. Wash. United Coop.*, 181 Md. 315 (1943)). Simply stated, the conspiracy theory of personal jurisdiction allows a court to exercise jurisdiction over an out-of-state defendant whose co-conspirators have committed jurisdictionally sufficient acts within the forum state. *Mackey*, 391 Md. at 126-27.

The conspiracy theory of jurisdiction has been recognized by Maryland as a matter of state law. *Mackey*, 391 Md. at 121. In accepting the theory, the *Mackey* court focused on the principles articulated in *Cawley v. Bloch*, 544 F.Supp. 133, 135 (D.Md. 1982): "(1) that [in Maryland civil law] the acts of one co-conspirator are attributable to all co-conspirators, and (2) that the constitutional requirement of minimum contacts between non-resident defendants and the forum can be met if there is a substantial connection between the forum and a conspiracy entered into by such defendants." *Mackey*, 391 Md. at 129. While the theory thus requires that the conspiracy have sufficient ties to the forum state, it also, as a foundational matter, requires that the

plaintiff allege a conspiracy.   The *Cawley* court described the theory as when

> (1) two or more individuals conspire to do something
> (2) that they could reasonably expect to lead to consequences in a particular forum, if
> (3) one co-conspirator commits overt acts in furtherance of the conspiracy, and
> (4) those acts are of a type which, if committed by a non-resident, would subject the non-resident to personal jurisdiction under the long-arm statute of the forum state, then those overt acts are attributable to the other co-conspirators, who thus become subject to personal jurisdiction in the forum, even if they have no direct contacts with the forum.

*Cawley*, 544 F.Supp. at 135.   The *Mackey* court, after quoting this language, went on to explain how the constitutional due process requirements - particularly, that of fair warning - are met by the conspiracy theory, as it requires the defendant to both enter into a conspiracy and have reason to believe that the conspiracy could result in his being subject to personal jurisdiction in the forum state.   *Mackey*, 391 Md. at 133-140.   In reaching this conclusion, the *Mackey* court reiterated the strict limitation imposed by the conspiracy theory of jurisdiction upon the foreseeability of a co-conspirator's forum-state conduct.

> By the terms of the conspiracy theory, a co-conspirator to whom the acts of another co-conspirator are attributed must have agreed to participate in a conspiracy that he or she could reasonably have expected at the time of agreement to involve the forum-related actions attributed to him or her.   The acts attributed are not simply unilateral acts of the co-conspirator who literally performed them,

> but are also the acts of the other
> co-conspirator.

*Id.* at 137.

Plaintiff has failed to make a *prima facie* showing under the conspiracy theory with respect to Mr. Markus.  There is no basis in the amended complaint or in the affidavits and evidence filed by Plaintiff to support a conclusion that Mr. Markus could have foreseen any jurisdictionally sufficient conduct with respect to Maryland at the time he joined the alleged conspiracy.  The amended complaint describes the scope of the alleged conspiracy between Stephen DeLuca and Mr. Markus only as: "a scheme to accomplish unlawful acts; namely, to convert millions of dollars of [Plaintiff's] Cash Collateral by diverting Delco's cash collections from the Blocked Account."  (Paper 44, at 38 ¶ 156).  Plaintiff also alleges that "the purpose of the scheme was to divert [Plaintiff's] Cash Collateral to enable DeLuca to use that money to fund his trip to Aruba, improvements to his ranch, his other business entities, and, after Delco's bankruptcy, to illegally operate Delco." (*Id.* ¶ 157).  Conduct in Florida that had negative consequences for Plaintiff in Maryland does not constitute transacting business in Maryland, nor is it sufficient purposeful availment of Maryland law to satisfy the requirements of Due Process.

Stephen DeLuca allegedly engaged in additional conduct more closely associated with Maryland by signing the Loan Agreement and

the Guarantee Agreement with a Maryland lender and by supplying false documentation in support of that loan request to Plaintiff in Maryland.   The alleged conspiracy involving Mr. Markus, however, extended only to the diversion of Delco's cash collection from the Blocked Account.   Because the conspiracy alleged dealt only with failing to repay the loan, rather than with the loan's origination, any connection between Mr. Markus and Stephen DeLuca's alleged activities directed toward Maryland with respect to the loan documents is too attenuated to be deemed foreseeable, and these acts by Stephen DeLuca must be considered unilateral acts of a related third party, which are insufficient to establish personal jurisdiction even under the conspiracy theory.   Accordingly, Plaintiff's claims against Mr. Markus will be dismissed for lack of personal jurisdiction.

## 2.  Mr. Thames and the Stutsman Firm

Plaintiff asserts that Thames and Stutsman have sufficient personal contacts with Maryland to be subject to personal jurisdiction in this court.  As contacts with Maryland, Plaintiff asserts that Mr. Thames and his firm were retained as counsel for three months to negotiate an agreement between Plaintiff and Delco, that they appeared by telephone before this court in opposition to the TRO motion, and that they remained engaged as counsel for one

week before filing a motion to withdraw.[6]  Assuming these contacts constitute doing business in Maryland, personal jurisdiction over this matter is not proper because Plaintiff's claims against these defendants do not arise out of their contacts with Maryland as required by the limiting condition under the Maryland long-arm statute.  *See* Md. Code Ann., Cts. & Jud. Proc., § 6-103(a).

While Plaintiff's contempt motion, which has been addressed separately by the court, arises from Plaintiff's representation of Delco at the TRO hearing, Plaintiff's claims against Thames and the firm under the amended complaint, to the extent they are not barred by the limitations of this court's subject matter jurisdiction as discussed above, are independent from any representation of Delco before this court.  Plaintiff's claims that Thames and his firm participated in the conversion of Delco's cash collections must, as discussed above, focus only on Delco's action to retain its cash collections, rather than the use of funds already converted to Delco's control.  Plaintiff does not articulate any aspect of Thames's representation of Delco before this court that encouraged or aided Delco in refusing to deposit cash collections in the Blocked Account.  Indeed, any such advice or assistance was given by Thames in Florida, and not before this court.  Thames's and hence his firm's connection with this court is too far attenuated

---

[6] Mr. Thames notes that neither he nor his firm formally entered an appearance in this matter at any time.

from the conversion and conspiracy allegations under the amended complaint to say that the claims arise from that representation. In addition, such an assertion of jurisdiction would violate Due Process, because the scope of any purposeful availment by Thames and his firm of the protection of Maryland law was limited to its informal representation of Delco in negotiations with Plaintiff and before this court, and would not extend to Thames's broader relationship with Delco and Stephen DeLuca in Florida.

Plaintiff also relies upon the conspiracy theory of personal jurisdiction for its claims against Mr. Thames and his firm. Plaintiff has also failed to make a *prima facie* showing as to personal jurisdiction over these Defendants under the conspiracy theory of personal jurisdiction.  The aim of the conspiracy that Plaintiff alleges involving Thames, his firm, and Stephen DeLuca was to "convert millions of dollars in [Plaintiff's] Cash Collateral and to illegally operate Delco without court authorization or [Plaintiff's] approval, including after the bankruptcy court denied Delco's use of [Plaintiff's] Cash Collateral." (Paper 44, at 40 ¶ 168).  With respect to Thames and the Stutsman firm's mental state, Plaintiff alleges only that they "had actual knowledge of the wrongfulness of their conduct and the likelihood that injury or damage to [Plaintiff] would result." (*Id.* at 41 ¶ 170).  As discussed above, there is no basis to infer, based on an alleged conspiracy to convert funds and knowledge that

the Plaintiff would suffer injury in Maryland, that a conspirator would foresee that a co-conspirator would engage in jurisdictionally sufficient acts in Maryland. It is also unclear that the acts by Stephen DeLuca in securing the loan and transmitting certifications and documents to Maryland or those of Thames in informally representing Delco with respect to this case, were actually in furtherance of the conspiracy to convert funds or that they were foreseeable based on that limited alleged conspiracy. Accordingly, the aspects of Plaintiff's claims against Mr. Thames and the Stutsman firm over which this court has subject matter jurisdiction will be dismissed for lack of personal jurisdiction.

### 3. Stephen DeLuca

Although Stephen DeLuca admits that he has waived any objection to personal jurisdiction, venue, or forum non conveniens under the terms of the Guarantee Agreement with respect to Plaintiff's breach of contract claims, he argues that this waiver does not apply to Plaintiff's tort claims. He has also moved to transfer the case pursuant to 28 U.S.C. § 1404(a) and to dismiss the fraud and conversion counts against him based on lack of venue and forum non conveniens. As discussed below, each of these motions will be denied based on the Guarantee Agreement's forum selection clause. The Guarantee Agreement provides a forum selection clause in favor of any federal or state court in Maryland

for "any judicial proceeding brought by or against Guarantor with respect to any of the Guaranteed Obligations or any of the rights or obligations hereunder, this Guaranty or any related agreement." (Paper 1, Ex. 2, at 9-10).  The clause also includes a waiver of any defense and a promise to submit to the Maryland court's jurisdiction.  The mere fact that Plaintiff has alleged claims for fraud and conversion, rather than proceeding exclusively for breach of the Guarantee Agreement is immaterial, because the language of the forum selection clause must be read to prevent a party from artfully pleading its way around the forum selection clause.  *See Belfiore v. Summit Fed. Credit Union*, 452 F.Supp.2d 629, 632 (D.Md. 2006) (tort actions are included within a forum selection clause, to prevent artful pleading around such a clause, if the tort claims "arise out of the contractual relation and implicate the contract's terms.").

The fraud and conversion claims asserted by Plaintiff are all within the scope of the Guarantee Agreement's forum selection clause.  The conversion claims depend on the Loan Agreement, which is incorporated into the Guarantee Agreement for purposes of its forum selection clause, because without that agreement Plaintiff would have no rights over the cash collateral that it alleges was diverted.  These claims also necessarily implicate the Loan Agreement's terms regarding the immediate deposit of accounts receivable payments into the Blocked Account.  Likewise, the fraud

claim asserts fraud in the inducement of the Loan Agreement, which arises from the Loan Agreement and directly implicates its terms regarding DeLuca's certification of the truth of the Borrowing Base Certificates and regarding the formula for the cap on the total amount of Delco's revolving line of credit.

Stephen DeLuca argues that the language of the Guarantee Agreement's forum selection clause is different from and narrower than the language used in the Loan Agreement, thus indicating that the Guarantee Agreement must have contemplated a forum selection clause that did not reach alternative theories of liability. This interpretation would require a strained reading of the plain language of the Guarantee Agreement forum selection clause, which reaches actions "arising" under the Guarantee Agreement or the related Loan Agreement. Likewise, this interpretation ignores the legal principle that a court will enforce a forum selection clause against tort claims related to covered contract claims even if these claims are not included within the plain language of the forum selection clause, to give the forum selection clause effect with respect to the related contract claims and avoid rendering it meaningless through artful pleading. *See Belfiore*, 452 F.Supp.2d at 632.

Stephen DeLuca argues in support of his forum non conveniens motion that litigating before this court would be inconvenient, but any inconvenience he asserts does not rise to the level necessary

to avoid the presumption of enforceability afforded to a forum selection clause.  Such a clause is unenforceable only if the party opposed to enforcement meets the heavy burden of showing that the clause is unreasonable.

> Choice of forum and law provisions may be found unreasonable if (1) their formation was induced by fraud or overreaching; (2) the complaining party will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state.

*Id.* (internal quotations omitted) (quoting *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996)).  Accordingly, Stephen DeLuca's motion to transfer this action and his motion to dismiss for lack of personal jurisdiction, lack of venue, and based on forum non conveniens will be denied.

## 4.  The DeLuca Entities

Plaintiff has made a sufficient *prima facie* showing, through its allegations that the DeLuca entities were Stephen DeLuca's alter egos, to deny the DeLuca entities' motion to dismiss or transfer based on the Guarantee Agreement's forum selection clause. "[I]t is generally held that all participants, parties, and non-parties are covered by choice of forum clauses so long as their alleged conduct is 'closely related' to the contract in question." *Id.* at 633 (citing cases, including *Hugel v. Corp. of Lloyd's*, 999

28

F.2d 206, 209 (7th Cir. 1993)).   The *Hugel* court found that two corporations were bound by the actions of an individual who owned nearly all of their shares and was their President because it was sufficiently foreseeable that they would be bound by his actions when he chose to cause them to become involved in the dispute. *Hugel*, 999 F.2d at 209-210.

In this case, if the amended complaint's alter ego allegations are true, they establish that Stephen DeLuca is the sole officer and sole owner of the DeLuca entities, that he commingled his funds with the entities, and that he did not observe the corporate form in operating the entities.   At least at this stage, these allegations are sufficient to support a conclusion that it would be foreseeable to these entities that they would be bound by DeLuca's choice of a forum in a contract in which he guaranteed the debt of another of his corporations with his personal assets.   Accordingly, the motion to dismiss or transfer filed by the DeLuca entities will be denied at this stage of the litigation.

## IV. Motions to Transfer

Both Stephen DeLuca and the DeLuca entities have moved to transfer this case pursuant to 28 U.S.C. § 1404(a).   Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."   28 U.S.C. § 1404.   To prevail on a motion to transfer

venue under § 1404, "the defendant must show by a preponderance of the evidence that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice." *Helsel v. Tishman Realty & Constr. Co., Inc.,* 198 F.Supp.2d 710, 711 (D.Md. 2002) (internal quotation omitted); *see also Lynch v. Vanderhoef Builders*, 237 F.Supp.2d 615, 617 (D.Md. 2002). In order to satisfy this burden, the defendant should submit, for example, affidavits from witnesses and parties involved that explain the inconvenience and hardship they "would suffer if the case were heard in the plaintiff's chosen forum." *Dow v. Jones*, 232 F.Supp.2d 491, 499 (D.Md. 2002) (citing *Helsel*, 198 F.Supp.2d at 712). Mere assertions of inconvenience or hardship, without more, are insufficient to sustain a motion to dismiss or to transfer pursuant to § 1404(a). *See Dow*, 232 F.Supp.2d at 499; *Helsel*, 198 F.Supp.2d at 712.

In deciding a motion to transfer venue under § 1404(a), the court must "weigh in the balance a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). The host of convenience factors a court should consider include:

> (1) the plaintiff's choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems

that make a trial easy, expeditious, and inexpensive; (8)
administrative difficulties of court congestion; (9)
local interest in having localized controversies settled
at home; (10) appropriateness in having a trial of a
diversity case in a forum that is at home with the state
law that must govern the action; and (11) avoidance of
unnecessary problems with conflicts of laws.

*Brown v. Stallworth*, 235 F.Supp.2d 453, 456 (D.Md. 2002) (quoting

*Choice Hotels Int'l, Inc. v. Madison Three, Inc.,* 23 F.Supp.2d 617,

622 n.4 (D.Md. 1998) (internal citations omitted)).  The decision

whether to transfer venue is committed to the sound discretion of

the trial court.  *See Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d

1253, 1257 (4th Cir. 1991); *see also Stewart*, 487 U.S. at 29

(stating that § 1404(a) intended "to place discretion in the

district court to adjudicate motions for transfer according to an

'individualized, case-by-case consideration of convenience and

fairness'") (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622

(1964)).

Defendants argued that Delco is a necessary party to this

action and cannot be included outside of Florida due to the

Automatic Stay, but this argument is no longer applicable, because

the Automatic Stay has been lifted, and the proceedings against

Delco in this action have been administratively reopened.

Defendants also assert that the convenience of the witnesses

and parties, and access to proof, weigh in favor to transfer.

Defendants identify several witnesses who they assert are key to

their defenses who reside in Flordia.  (Paper 39, Ex. 1, S. DeLuca

Aff. ¶¶ 13-15).  Conversely, Plaintiff has also identified several key witnesses who reside in Maryland.  (Paper 47, Ex. 1, Gehrs Decl.).  Because it appears that witnesses identified by each party are located in its favored jurisdiction, this factor weighs equally in favor of either forum.  When the availability of compulsory process is taken into account, it is more likely that Defendants' witnesses in Flordia would be unwilling to testify than it is that Plaintiff's witnesses in Maryland would be unwilling to testify, because Plaintiff's witnesses are its employees.  It would, however, involve mere speculation to assert at this early stage that any witness forecast by either party would be unwilling to testify.  At most, this factor weighs only weakly in favor of transfer absent a more concrete indication that witnesses unwilling to testify would not be available in this forum.  The factor of availability of other evidence is equipoise, because both Plaintiff and Defendants point to documents in their possession in the state of their preferred forum that they would seek to introduce as evidence.

Defendants also argue that this case is closely related to actions pending in Florida.  Apart from Delco's bankruptcy proceeding, it is not clear how this action is related to any other action presently pending in Florida, and the bankruptcy court determined that this action could proceed independent of Delco's bankruptcy when it lifted the automatic stay.  Moreover, any close

relationship between this action and Delco's bankruptcy will be significantly curtailed by this court's subject matter jurisdiction ruling.   Plaintiff's claims of unjust enrichment and conversion will be dismissed insofar as they relate to the further diversion of funds derived from Delco's Cash Collateral after the cash collections were initially diverted from the Blocked Account. Accordingly, this factor does not weigh significantly in favor of either forum.

In essence, this claim bears a strong relationship to each forum, because it involves the alleged complete failure to repay a loan under a loan agreement between a Maryland lender and a Florida borrower.  As such, it is not surprising that the factors discussed are roughly balanced between the two states.   In analyzing the weight to be afforded to Plaintiff's choice of forum, it is not entirely insignificant that Stephen DeLuca and Delco both agreed to litigate in this forum under the forum selection clauses in the loan documents. Under the circumstances, although the need for compulsory process for attendance of unwilling witnesses weighs slightly in favor of transfer, Defendants have not made a sufficiently compelling showing that they will be prejudiced in presenting their defenses in this forum, and have not overcome the presumption in favor of the Plaintiff's chosen forum.  Accordingly, Defendants' motions to transfer will be denied.

## V.  Conclusion

For the foregoing reasons, the motion to dismiss filed by Denise DeLuca will be granted based on lack of subject matter jurisdiction.  The motion to dismiss filed by Mr. Markus and by Mr. Thames and the Stutsman firm will be granted in part based on lack of subject matter jurisdiction and otherwise granted based on lack of personal jurisdiction.  The motion to dismiss filed by Stephen DeLuca and the motion to dismiss or to transfer by the DeLuca entities will be granted in part based on lack of subject matter jurisdiction, and will otherwise be denied based on the Guarantee Agreement's forum selection clause.  The motion to transfer filed by Stephen DeLuca and the DeLuca entities will be denied.  A separate Order will follow.


                        _____/s/_____
                        DEBORAH K. CHASANOW
                        United States District Judge