IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CAPITALSOURCE FINANCE, LLC      :

                                                       :

   v.                                 : Civil Action No. DKC 06-2706

                                                       :

DELCO OIL, INC., et al.         :

                                                       :

**MEMORANDUM OPINION**

Two matters are presently pending and ready for resolution in this action arising from the breach of a loan agreement: (1) a motion filed by Plaintiff CapitalSource Finance, LLC, for entry of default judgments against Defendants All-Star Sports Camp, Inc., DeLuca Properties, Inc., and Gas Properties, Inc. (paper 144), and (2) the issue of whether Defendant Stephen B. DeLuca should be held in contempt of the court's Temporary Restraining Order in this case, signed October 16, 2006 (paper 17). The relevant issues have been briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Plaintiff's motion for default judgments will be granted and Mr. DeLuca will not be held in contempt.

**I.  Background**

On January 22, 2007, Plaintiff CapitalSource Finance, LLC, filed an amended complaint alleging, as to Defendants All-Star

Sports Camp, Inc., DeLuca Properties, Inc., and Gas Properties, Inc. (collectively, "Defendants"), claims of alter ego (count XI), unjust enrichment (count XII), and civil conspiracy (count XIII).  (Paper 44).  On September 17, 2007, the court granted in part and denied in part motions to dismiss filed by Defendants, along with co-defendants Stephen B. DeLuca ("Mr. DeLuca"), Richard Thames, Stutsman, Thames and Markey, P.A., Denise DeLuca, and Steven J. Markus, Jr.  (Papers 70, 71).  The only surviving claim as to Defendants was count XI, which alleged they were the alter egos of Mr. DeLuca, their sole shareholder and corporate officer.  Defendants answered the amended complaint on November 19, 2007.  (Papers 82, 83, 84).

On June 16, 2008, Plaintiff moved for partial summary judgment against Defendants Delco Oil, Inc. ("Delco Oil") and Mr. DeLuca.  (Paper 92).  On March 26, 2009, the court issued a memorandum opinion and order granting in part and denying in part Plaintiff's motion.  (Papers 101, 102).  As relevant here, the court granted relief with respect to Plaintiff's breach of contract claim against Mr. DeLuca, and entered judgment against him in the amount of $21,561,846.30, for which Delco Oil was jointly and severally liable.  (Paper 102).

On April 17, 2009, the attorneys for Defendants and Mr. DeLuca moved to withdraw appearance.  (Paper 103).  Shortly

thereafter, the court issued a letter order, addressed to Mr. DeLuca, advising, *inter alia*, that "[t]he corporations [*i.e.*, Defendants] must have new counsel enter an appearance by May 18, 2009, or be subject to default judgment on claims against them." (Paper 104). On May 15, 2009, Jan I. Berlage, Esq., entered his appearance on behalf of Mr. DeLuca and All-Star Sports Camp (paper 105), and the court subsequently granted a motion filed Mark L. Horwitz, Esq., to appear *pro hac vice* on behalf of the same defendants (paper 120). No counsel entered appearance on behalf of DeLuca Properties, Inc., and/or Gas Properties, Inc., however, and, on July 10, 2009, the court issued an order directing those defendants to show cause why default should not be entered against them. (Paper 113). Neither defendant responded.

On September 21, 2009, Mr. Berlage moved to withdraw his appearance on behalf of Mr. DeLuca and All-Star Sports Camp, Inc. (paper 130), as did Mr. Horwitz, on October 14, 2009 (paper 133). By a memorandum opinion and order issued on October 19, 2009, the court granted the attorneys' motions to withdraw and directed All-Star Sports Camp, Inc., to show cause by no later than November 6, 2009, why default should not be entered against it. (Papers 135, 136). This defendant also failed to respond. On the date its response was due, however, the clerk filed a

notice of bankruptcy indicating that Mr. DeLuca had filed a Chapter 7 petition in the United States Bankruptcy Court for the Middle District of Florida. (Paper 138). On November 12, 2009, the court issued an order administratively closing the case against Mr. DeLuca in light of the automatic stay that had been issued in the bankruptcy case. (Paper 139). On the same date, the court entered default against Defendants. (Paper 140). Plaintiff filed the instant motion for default judgment on December 17, 2009. (Paper 144).[1]

**II. Default Judgment**

Where a default has been previously entered and the complaint does not specify a certain amount of damages, the court may enter a default judgment, upon the plaintiff's application and notice to the defaulting party, pursuant to Fed.R.Civ.P. 55(b)(2). A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *See Dow v. Jones*, 232 F.Supp.2d 491, 494 (D.Md. 2002). The Fourth Circuit has a "strong policy" that "cases be decided

---

[1] In addition to moving for entry of default judgment as to the corporate defendants, Plaintiff requests "an order clarifying that the administrative closing of this case as to Stephen B. DeLuca does not prejudice CapitalSource's right to [pursue] discovery in aid of any final judgment." (Paper 144, at 3). This request appears to be in the nature of an advisory opinion, which the court declines to provide.

4

on their merits," *Dow*, 232 F.Supp.2d at 494 (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), but default judgment may be appropriate where a party is essentially unresponsive, *SEC v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D.Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

Upon entry of default, the well-pled allegations of a complaint as to liability are taken as true, but the allegations as to damages are not. *See Lawbaugh*, 359 F.Supp.2d at 422. Federal Rule of Civil Procedure 54(c) limits the type of judgment that may be entered based on a party's default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Thus, where a complaint specifies the amount of damages sought, the plaintiff is limited to entry of a default judgment in that amount. "[C]ourts have generally held that a default judgment cannot award additional damages . . . because the defendant could not reasonably have expected that his damages would exceed that amount." *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000). Where a complaint does not specify an amount, "the court is required to make an independent determination of the sum to be awarded." *Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.D.C. 2001) (citing *SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801,

5

814 (2nd Cir. 1975); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2nd Cir. 1981)). While the court may hold a hearing, it is not required to do so; it may rely instead on "detailed affidavits or documentary evidence to determine the appropriate sum." *Adkins*, 180 F.Supp.2d at 17 (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)).

The allegations of liability contained in Plaintiff's amended complaint, taken as true, establish that Defendants were the alter egos of Mr. DeLuca. While Maryland courts have not set forth specific criteria for applying the alter ego doctrine, "some of the factors commonly considered" are:

> (1) whether the corporation is inadequately capitalized, fails to observe corporate formalities, fails to issue stock or pay dividends, or operates without a profit, (2) whether there is commingling of corporate and personal assets, (3) whether there are non-functioning officers or directors, (4) whether the corporation is insolvent at the time of the transaction, and (5) the absence of corporate records.

*RaceRedi Motorsports, LLC v. Dart Mach., Ltd.*, 640 F.Supp.2d 660, 669-70 (D.Md. 2009) (quoting *Hildreth v. Tidewater Equip. Co.*, 378 Md. 724, 735-36 (2003)). Here, Plaintiff alleges that Mr. DeLuca was the sole shareholder and officer of each of the corporate defendants, all of which shared the same address as Defendant Delco Oil. (Amended Complaint, Paper 44, at ¶ 92). Defendants did not observe corporate formalities; indeed,

"[t]here were no board meetings (or boards for that matter) and no shareholder meetings." (*Id.* at ¶ 93). Defendants DeLuca Properties and Gas Properties owned several parcels of real property from which Mr. DeLuca operated various other business entities, none of which paid rent to the corporate defendants. (*Id.* at ¶ 94). The facilities of Defendant All-Star Sports Camp, moreover, were located at Mr. DeLuca's personal residence, and employees of Delco Oil performed the maintenance on those facilities. (*Id.* at ¶ 96). In fact, Defendants had no employees of their own; "[o]ne hundred percent of their labor came from Delco employees." (*Id.* at ¶ 95). According to Plaintiff, the corporate defendants were "set up in an attempt to shelter [Mr.] DeLuca from personal liability and, in the end, to secret[e] funds away from Delco's creditors, including [Plaintiff]." (*Id.* at ¶ 93). More specifically, Mr. DeLuca "took funds both directly from [Plaintiff] and indirectly through Delco and transferred them to [Defendants] in an attempt to hide these assets from [Plaintiff]." (*Id.* at ¶ 185). Under these facts, Defendants' liability under an alter ego theory is established.

As to damages, the amended complaint seeks a judgment against Defendants "in an amount in excess of $18 million, plus additional sums as they accrue," in addition to punitive

7

damages, interest, attorneys' fees, and costs. (Paper 44, at 46). Although the complaint does not specify a damages amount, Plaintiff requests in its motion for default judgment that judgment be "entered against [Defendants] jointly and severally in the amount of $21,561,846.30," the same amount entered against Mr. DeLuca and Delco Oil for breach of contract in the ruling deciding Plaintiff's partial motion for summary judgment. (Paper 144, at 3). In support of the requested amount, Plaintiff relies on the affidavit of Todd Gehrs, which it previously submitted in support of its summary judgment motion, as well as the court's "calculations in connection with its entry of summary judgment on Counts I and II of CapitalSource's Amended Complaint[.]" (*Id*. at ¶ 2).

The amended complaint alleges that Defendants "should be held equally responsible for [Mr.] DeLuca's fraud, conversion, and conspiracy[.]" (Paper 44, at ¶ 187). The Court of Special Appeals of Maryland set forth the analysis for considering the measure of damages in fraud cases in *Goldstein v. Miles*, 159 Md.App. 403, 422-23 (2004):

> In determining "the proper measure of damages in fraud and deceit cases," Maryland applies the "flexibility theory." *Hinkle v. Rockville Motor Co*., 262 Md. 502, 511, 278 A.2d 42 (1971). Under that theory, a victim of fraudulent or negligent misrepresentation may elect to recover either "out-of-pocket" expenses or benefit-of-the-bargain damages.

> The former will permit the plaintiff to recover his or her actual losses; the latter "put[s] the defrauded party in the same financial position as if the fraudulent representations had in fact been true," *Midwest Home Distrib., Inc. v. Domco Indus. Ltd.*, 585 N.W.2d 735, 739 (Iowa 1998), by awarding as damages "'the difference between the actual value of the property at the time of making the contract and the value that it would have possessed if the representations had been true.'" *Hall v. Lovell Regency Homes Ltd. P'ship*, 121 Md. App. 1, 12, 708 A.2d 344 (1998) (quoting *Beardmore v. T.D. Burgess Co.*, 245 Md. 387, 390, 226 A.2d 329 (1967)).

Benefit-of-the-bargain damages are only obtainable under the flexibility theory if there is an enforceable bargain. *See Seton v. United Gold Network, LLC*, Civ. No. DKC-06-1246, 2008 WL 1925180, at *8 (D.Md. Apr. 30, 2008) (citing *Goldstein*, 159 Md.App. at 426).

As the court made clear by awarding summary judgment in favor of Plaintiff on its breach of contract claims against Delco Oil and Mr. DeLuca, the contract at issue here is enforceable; thus, Plaintiff may recover benefit-of-the-bargain damages, as it appears to request. In calculating its award of $21,561,846.30 on Plaintiff's breach of contract claims, the court relied on Mr. Gehr's affidavit to determine the amount owing to Plaintiff under the loan agreement, including interest on the balance and default interest, as of March 26, 2009. (Paper 101, at 17-19). The amount awarded to Plaintiff on the

9

breach of contract claims was, therefore, a benefit-of-the-bargain award, and the same amount may be awarded against Defendants on Plaintiff's alter ego claim. *See Luskin's, Inc. v. Consumer Prot. Div.*, 353 Md. 335, 384 (1999) (identifying "benefit of the bargain, or expectation interest, damages" as "the difference between the value of that which was 'promised' less the value of that which was received"). Accordingly, default judgment will be entered in that amount.

Plaintiff further requests that this judgment be certified as final.[2] Plaintiff asserts that this decision will conclude this matter as to these defendants, that final judgment has already been entered in favor of Delco Oil, and that the failure of Defendants to retain counsel and Mr. DeLuca's personal bankruptcy filing suggest that Defendants will be insolvent prior to the conclusion of the case, if they are not already.

---

[2] The case is not otherwise final and appealable because of the claims that remain against Mr. DeLuca. Although those claims were administratively closed, "an otherwise non-final order does not become final because the district court administratively closed the case[.] . . . 'An order administratively closing a case is a docket management tool that has no jurisdictional effect.'" *Penn-Am. Ins. Co. v. Mapp*, 521 F.3d 290, 295 (4th Cir. 2008) (quoting *Dees v. Billy*, 394 F.3d 1290, 1294 (9th Cir. 2005)). The Fourth Circuit has recognized that it is sometimes appropriate to certify separable claims under Rule 54(b) where the administrative closing functions "like a formal stay of proceedings" as to the remaining claims. *Id.* at 296.

Thus, according to Plaintiff, there is no just reason to delay entry of a final judgment. (Paper 144, at ¶ 3).

Pursuant to Fed.R.Civ.P. 54(b):

> When an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Because of the importance of preventing piecemeal appeals of a case, a "Rule 54(b) certification is recognized as the exception rather than the norm. It should neither be granted routinely, nor as an accommodation to counsel." *Braswell Shipyards, Inc. v. Beazer East, Inc.*, 2 F.3d 1331, 1335 (4th Cir. 1993) (citation omitted). Furthermore, "it is settled that certification of a judgment as to a claim or party in a multi-claim or multi-party suit is disfavored in the Fourth Circuit." *Bell Microproducts, Inc. v. Global-Insync, Inc.*, 20 F.Supp.2d 938, 942 (E.D.Va. 1998).

To make a proper Rule 54(b) certification, a district court must take two steps:

> First, the district court must determine whether the judgment is final. [*Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 7 (1980)]. The Court in *Curtis-Wright* stated that a judgment "must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'"

11

> *Id.* (quoting *Sears, Roebuck & Co.* [*v. Mackey*, 351 U.S. 427, 436 (1956)]). Second, the district court must determine whether there is no just reason for the delay in the entry of judgment. *Curtiss-Wright*, 446 U.S. at 8, 100 S.Ct. at 1465.

*Braswell Shipyards, Inc.*, 2 F.3d at 1335.

The Fourth Circuit has explained that, in making this case-specific determination, the district court should consider the following factors, if applicable:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Id.* at 1335-36 (citations omitted).

Here, the entry of default judgments in favor of Plaintiff on count XI, alleging alter ego, constitute final judgments against Defendants. Thus, the remaining question is whether "there is no just reason for delay." Fed.R.Civ.P. 54(b). In making this determination, the court "must take into account judicial administrative interests as well as the equities involved." *Curtiss-Wright*, 446 U.S. at 8. As the Supreme Court

has cautioned, Rule 54(b) certification is not something to be granted lightly, but a "remedy [that] should be reserved for the infrequent harsh case." *Id*. at 5.

Upon the entry of default judgment, Defendants' liability will be fully decided. Considering that Mr. DeLuca is involved in bankruptcy proceedings and that he is the sole shareholder and corporate officer of Defendants, there is a likelihood that Defendants are either presently insolvent or will be before the conclusion of this case. *See Pereira v. Cogan*, 275 B.R. 472, 474 (S.D.N.Y) ("Courts have frequently found no just reason for delay, and entered a Rule 54(b) judgment, when the judgment debtor is insolvent or may become insolvent before the conclusion of judicial proceedings."), *aff'd*, 52 Fed.Appx. 536 (2nd Cir. 2002). As Defendants have not filed any counterclaims, moreover, there is no possibility of offset. Thus, the court finds no just reason for delay and the default judgment against Defendants will be certified as final.

**III. Contempt**

On November 8, 2006, Plaintiff moved for an order directing Mr. Deluca and his attorneys to show cause why they should not be held in contempt. (Paper 8). As the court explained at length in a previous decision, Plaintiff contended that Mr. DeLuca and his attorneys violated a temporary restraining order

("the TRO") issued by this court on October 16, 2006. *See Capital Source Fin., LLC v. Delco Oil, Inc.*, 520 F.Supp.2d 684, 686-87 (D.Md. 2007). According to Plaintiff, Mr. DeLuca and his attorneys violated the TRO by making several transfers of funds from a controlled account (held by Delco Oil) in contravention of the court's order not to take "any action with respect to [those funds]." (Paper 17). In particular, Mr. DeLuca, with assistance from his attorneys, made three transfers on October 15, 2006 ("the Pre-Petition Transfers") and eight transfers after Delco Oil filed a bankruptcy petition on October 17, 2006 ("the Post-Petition Transfers").

The court held a hearing on November 20, 2007, to resolve some of the factual issues raised by Plaintiff's motion. (Paper 91). At the conclusion of that hearing, the court denied most of the motion, but reserved judgment on whether Mr. DeLuca violated the TRO by making the Post-Petition Transfers. The court now addresses that open issue.

A court may impose sanctions for civil contempt "to coerce obedience to a court order or to compensate the complainant for losses sustained as a result of" violation of a court order. *In re Gen. Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995) (quoting *Connolly v. J.T. Ventures*, 851 F.2d 930, 932 (7th Cir. 1988)).

> To establish civil contempt, each of the following elements must be shown by clear and convincing evidence:
>
> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's "favor"; (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) . . . that [the] movant suffered harm as a result.

*Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (quoting *Colonial Williamsburg Found. v. The Kittinger Co.*, 792 F.Supp. 1397, 1405-06 (E.D.Va. 1992)). The court may also award attorney's fees, but such an award is appropriate only when a contemnor's conduct rises to the level of "obstinance or recalcitrance." *Capital Source*, 520 F.Supp.2d 684 (quoting *Columbia Gas Transmission Corp. v. Mangione Enters. of Turf Valley, LP*, 964 F.Supp. 199, 204 (D.Md. 1996)).

Two bankruptcies filed by relevant parties complicate the contempt issue. First, Delco Oil filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Middle District of Florida on October 17, 2006. Mr. DeLuca initially contended that the automatic stay issued in that case (pursuant to 11 U.S.C. § 362(a)) barred the present contempt motion. In its prior decision, however, the court expressed its skepticism that the automatic stay was any bar. *Capital Source*, 520

F.Supp.2d at 696-97. Nothing that occurred at the hearing has shaken that conviction. As the court observed before, the Delco bankruptcy court lifted the automatic stay with respect to this litigation. *Id.* at 696 (citing *In re Delco Oil, Inc.*, 365 B.R. 246, 249-50 (Bankr.M.D.Fla. 2007)). Thus, the stay is no longer relevant.

Even if it were still relevant, it is doubtful that an automatic stay as to Delco Oil would prevent the court from imposing sanctions against Mr. DeLuca. A Section 362(a) stay applies by its very terms only to the debtor – not to co-defendants and related parties – and the Fourth Circuit has stressed the provision must be given a "literal interpretation." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 126 (4th Cir. 1983); *see also, e.g.*, *Forcine Concrete & Constr. Co., Inc. v. Manning Equip. Sales & Serv.*, 426 B.R. 520, 523 (E.D.Pa. 2010) (explaining that the stay "generally 'does not bar an action against the principal of a debtor-corporation'") (quoting *Maritime Elec. Co, Inc. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3$^{d}$ Cir. 1991)); *Lukas, Nace, Gutierrez & Sachs, Chartered v. Havens*, 245 B.R. 180, 181 (D.D.C. 2000) (observing that a stay does not apply to a debtor's co-defendant).

The bankruptcy-related issues, however, do not end there, as Mr. DeLuca has also filed for bankruptcy himself. *See In re*

16

*Stephen Benito DeLuca*, No. 6:09-bk-16917 (Bankr.M.D.Fla. filed Nov. 5, 2009). The stay associated with that case is still in place. Although that stay might appear to bar the present contempt action, bankruptcy stays do not bar every type of contempt motion. As another court in this circuit has explained:

> It is sensibly settled . . . that there is an exception to the operation of the automatic stay; it does not bar orders to show cause or findings of contempt when necessary to uphold the dignity of a court order. Were this not so, a party could "blatantly violate direct orders of [a] court and then seek shelter from a bankruptcy judge." *U.S. Sprint Communications Co. v. Buscher*, 89 B.R. 154, 156 (D.Kan. 1988). In essence, the bankruptcy process cannot be invoked to immunize contumacious behavior.

*Am. Online, Inc. v. CN Prods., Inc.*, 272 B.R. 879, 881 (E.D.Va. 2002) (footnote omitted); *accord In re The Billing Resource*, No. 07-52890-ASW, 2007 WL 3254835, at *6 (Bankr.N.D.Cal. Nov. 2, 2007); *SEC v. Bilzerian*, 131 F.Supp.2d 10, 14-15 (D.D.C. 2001) (listing cases); *In re Rook*, 102 B.R. 490, 493-95 (Bankr.E.D.Va. 1989) (listing cases). These cases recognize that, when an automatic stay is in place, the court can consider one, but only one, type of contempt: that necessary to uphold the dignity of the court. *See, e.g., NLRB v. Sawulski*, 158 B.R. 971, 975 (E.D.Mich. 1993) ("Only contempt orders to uphold the dignity of

the court are excepted from the automatic stay."). Thus, the central question is whether the contempt sanction in this case is (a) animated by a need to preserve the dignity of the court or (b) actually an attempt to compensate the plaintiff for losses that must be recovered in the bankruptcy proceeding.

This case, of course, is a civil contempt proceeding. *See generally Capital Source*, 520 F.Supp.2d 684. The court previously explained the difference between civil and criminal contempt proceedings:

> The basic difference between civil and criminal contempt sanctions is that civil contempt sanctions are intended to coerce the contemnor into compliance with court orders or to compensate the complainant for losses sustained, while *criminal* contempt sanctions are intended to *vindicate the authority of the court* by punishing the contemnor and deterring future litigants misconduct.

*Id.* at 687 (quoting *Bradley v. Am. Household, Inc.*, 378 F.3d 373, 378 (4th Cir. 2004)) (internal quotation marks omitted; emphasis added). In view of this distinction, it becomes obvious that – as a civil proceeding – the present contempt motion does not vindicate the interests of the court, but rather addresses losses suffered by Plaintiff. Indeed, all of the relief requested from Mr. DeLuca, including restitution and attorney's fees (paper 17, at 5), would inure to the benefit of Plaintiff and amount to a backdoor recovery of assets held

within the bankruptcy estate.  In these circumstances, the court must deny the motion for a finding of contempt.  *See In re Thayer*, 24 B.R. 491, 493 (Bankr.W.D.Wis. 1982) ("[T]he presence of a collection motive on the part of the party instigating the enforcement of a contempt order is a significant consideration. Because that collection motive invokes the stay against collection of 11 U.S.C. § 362 it precludes the creditor from taking steps to police the integrity of the court's order.").

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for default judgment will be granted and Mr. DeLuca will not be held in contempt.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge